**THIS PROPOSED DISCLOSURE STATEMENT IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS PROPOSED DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE COURT.**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 11 |
| | ) Case No. 10-43501 |
| FREECREST INVESTMENTS, LLC | ) |
| | ) |
| Debtor. | ) Hon. Eugene R. Wedoff |
| | ) |

<u>DISCLOSURE STATEMENT WITH RESPECT TO THE
PRIVATEBANK'S CHAPTER 11 PLAN FOR
FREECREST INVESTMENTS, LLC</u>

Dated: February 22, 2011

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT, INCLUDING THE FOLLOWING SUMMARY, ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, ANY PLAN SUPPLEMENT, EXHIBITS ANNEXED TO THE PLAN, THIS DISCLOSURE STATEMENT AND ALL EXHIBITS TO THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER SUCH DATE. **ALL CREDITORS SHOULD READ CAREFULLY THE "RISK FACTORS" SECTION HEREOF BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE, RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL BANKRUPTCY RULE 3016-1 AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE LAW. THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR BY ANY STATE SECURITIES COMMISSION OR SIMILAR PUBLIC, GOVERNMENTAL, OR REGULATORY AUTHORITY, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY SUCH OTHER AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN

THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY PERSON, PARTY OR ENTITY FOR ANY OTHER PURPOSE.

THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE PLAN SUMMARY IN THIS DISCLOSURE STATEMENT. ALL EXHIBITS TO THIS DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

AS TO CONTESTED MATTERS, EXISTING LITIGATION INVOLVING, OR POSSIBLE ADDITIONAL LITIGATION TO BE BROUGHT BY, OR AGAINST, THE DEBTOR, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, A STIPULATION OR A WAIVER, BUT RATHER AS A STATEMENT MADE WITHOUT PREJUDICE SOLELY FOR SETTLEMENT PURPOSES, WITH FULL RESERVATION OF RIGHTS, AND IS NOT TO BE USED FOR ANY LITIGATION PURPOSE WHATSOEVER BY ANY PERSON, PARTY OR ENTITY. AS SUCH, THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY IN INTEREST, NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE SECURITIES, FINANCIAL OR OTHER EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTOR.

The PrivateBank and Trust Company ("PrivateBank" or "Bank"), provides this Disclosure Statement to the creditors of and other parties in interest with respect to the above captioned Debtor as provided for and required under the provisions of 11 U.S.C. §1125 in conjunction with the liquidating Plan proposed by the PrivateBank and filed on February 7, 2011. A copy of The PrivateBank's liquidating Plan, hereinafter referred to as the "Bank's Plan" of "Plan" accompanies this Disclosure Statement.

The information contained in this Disclosure Statement has been prepared by The PrivateBank, its attorneys and other professionals based upon information provided by the Debtor, discerned from public filings made by and other data created, provided or propagated by the Debtor and its attorneys, accountants, consultants and other professionals. While every effort

has been made to produce complete and accurate information, The PrivateBank is unable to warrant or represent that all of the information is accurate.

The financial data and other information contained herein are unaudited unless otherwise stated, and were prepared from information provided by the Debtor and/or discerned from other sources, including various public records.

The Bank's Plan, and this Disclosure Statement, are premised upon certain assumptions about future events which are, inherently, speculative.

A formal appraisals of the Debtor's real property has been ordered by PrivateBank for purposes of the Bank's proposed Plan. However, the appraisals will not be completed until Mid April 2011. To the extent possible, the Bank has attempted to employ a method of valuation and relevant date for the valuation of any property referred to herein and/or within the Bank's Plan.

The values assigned to assets within this Disclosure Statement represent the Bank's best estimate as to the worth of a particular piece of property without taking into account the costs of sale or other disposition.

No representations concerning the Debtor, including but not limited to the value of its assets, the extent of its liabilities or such future business operations as it may or may not have are authorized by the PrivateBank other than those set forth herein and on such terms as same are set forth herein. Creditors should not rely upon any other representations or inducements made by others in connection with the evaluation of this Disclosure Statement or the Plan, or in connection with any voting with respect to the Bank's Plan of the Debtor's competing Plan. If unauthorized representations or inducements concerning the Debtor, the Debtor's Plan, the Bank or the Bank's Plan are made to you in connection with your vote as to either Plan, you should report that information to the Bank's counsel as indicated at the conclusion of this Disclosure

130056716v4 0917172 36379

Statement and the Office of the United States Trustee, 219 S. Dearborn Street, Chicago, Illinois 60604.

I.   **INTRODUCTION**

The Private Bank hereby provides this Disclosure Statement (as it may be amended, the "Disclosure Statement") to creditors pursuant to 11 U.S.C. § 1125 and in support of the PrivateBank's Chapter 11 Plan for this Debtor (the "Plan") filed with the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court") on February 7, 2011. The Bank is the proponent of the Plan within the meaning of §1129 of the Bankruptcy Code. The purpose of this Disclosure Statement is to provide Creditors whose Claims or Interests are impaired under the Plan with adequate information to make an informed and prudent business judgment when voting on the Plan. This Disclosure Statement is not meant to take the place of the Plan. Because Creditors will be bound by the Plan if the Bankruptcy Court confirms it, the Bank urges Creditors to read the Plan carefully and to consult with their own attorneys about the Plan's effect on their Claims. Each capitalized term used in this Disclosure Statement that is not otherwise defined herein shall have the meaning ascribed to such term in the Plan.

This Disclosure Statement sets forth certain information, based almost exclusively upon information provided by the Debtor and/or contained in the Debtor's filings and other statements made by the Debtor in this Chapter 11 Case, regarding the Debtor's prepetition operating and financial history, its reasons for seeking protection under Chapter 11 of the Bankruptcy Code and significant events that have occurred during the Chapter 11 Case. This Disclosure Statement also describes certain terms and provisions of the Plan, certain effects of confirmation of the Plan, the releases and exculpations to be furnished under the Plan, and the manner in which distributions will be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that Holders of Claims entitled to vote on the Plan must follow for their votes to be counted.

A.   **General.**

Freecrest Investments, LLC ("Debtor") filed its voluntary Petitions for Relief ("Petition") under Chapter 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code"), with the Clerk of the United States Bankruptcy Court (the "Court" or "Bankruptcy Court") on September 29, 2010 (the "Petition Date").

This Disclosure Statement is being distributed pursuant to §1125 of the Bankruptcy Code to Holders of Claims with respect to the Debtor that are entitled to vote on the Plan in connection with (i) the solicitation of acceptances of the Plan and (ii) the hearing to consider confirmation of the Plan. A hearing on the confirmation of the Plan is scheduled for [DATE] at [TIME] prevailing Central Time.

The Plan is annexed as Exhibit A to this Disclosure Statement.

In addition, a Ballot for voting to accept or reject the Plan is enclosed with this Disclosure Statement for the Holders of Claims that are entitled to vote to accept or reject the Plan.

Copies of the Plan and the Disclosure Statement are available for review at the Office of the Clerk, United States Bankruptcy Court for the Northern District of Illinois, 219 South Dearborn Street, Room 713, Chicago, Illinois 60604, online at http://ecf.ilnb.uscourts.gov or upon written request to Bank's counsel at:

> William Connelly, Esq.
> Hinshaw & Culbertson LLP
> 222 N. LaSalle Street
> Suite 300
> Chicago, Illinois 60601

On [DATE], the Bankruptcy Court may enter an order approving this Disclosure Statement (the "Disclosure Statement Order") as containing "adequate information" in accordance with §1125 of the Bankruptcy Code to enable a hypothetical, reasonable investor typical of Holders of Claims against the Debtor to make an informed judgment as to whether to accept or reject the Plan, and the Bankruptcy Court has authorized its use in connection with the solicitation of votes with respect to the Plan.

**APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.**

The Disclosure Statement Order sets forth in detail the deadlines, procedures and instructions for voting to accept or reject the Plan and for filing objections to confirmation of the Plan, the Voting Deadline (defined herein below) and the applicable standards for tabulating the Ballots. In addition, detailed voting instructions accompany each Ballot. Each Holder of a Claim entitled to vote on the Plan should read in their entirety this Disclosure Statement (including the Exhibits attached hereto), the Plan and the instructions accompanying the Ballots before voting on the Plan. These documents contain, among other things, important information concerning the classification of Claims and Interests for voting purposes and the tabulation of votes. No solicitation of votes to accept the Plan may be made except pursuant to §1125 of the Bankruptcy Code.

**B.    Plan Overview: Primary Elements of the Plan.**

The primary elements of the Plan are as follows:

First, all distributions to Creditors will be made either (i) from the proceeds of those Creditors' own collateral, (ii) from the sale of Property of the Estate, and/or (iii) from Cash Collateral contributed by the Bank to make distributions to those Creditors, plus a share of proceeds of those Avoidance Actions that are transferred to a Liquidating Trustee and are successfully prosecuted.

Second, all members of a particular Class of Creditors will be treated the same.

The treatment of Classes of Creditors under the Plan may be briefly summarized as follows:

130056716v4 0917172 36379

- **Class 1 Priority Claims**. The Debtor has not scheduled any creditors as holding Priority Claims. It is estimated that there may, in fact, be Claims entitled to membership within this Class. In the event that there are such claims, they will be treated as follows:

  - All Allowed Priority Claims against the Debtor will be paid in full.

  - All Distributions to pay Allowed Priority Claims will be made from the Bank's Cash Collateral.

- **Class 2 Claims of Governmental Entites.** The Debtor has not scheduled any Governmental Entities as holding claims entitled to membership in this Class.

- **Class 3 Secured Claims of Bank.** The Bank holds a Claim against the Debtor in the amount of $4,605,514.53. The Bank is not seeking a valuation of their Secured Claim as a condition precedent to voting or otherwise, but it is not disputed that its Claim is undersecured. The most recent estimate obtained by the Bank for the value of Collateral No. 1 and Collateral No. 2 is $3,778,000, implying that the Bank may have Unsecured Deficiency Claims equal to $827,514.53.

The Secured Claim of the Bank will be treated as follows under the Plan:

  - All of the Bank's collateral, other than collateral they contribute for the benefit of other Creditors under the Plan, will be deeded or otherwise transferred on the Effective Date to the Plan Transferee, which will be an entity designated and controlled by the Bank for its benefit.

  - The Plan Transferee will receive all of the Property of the Estate, including all Cash not used to fund Distributions to other Creditors under the Plan. The Plan Transferee will arrange for the management of the Property of the Estate as a going concern until it is sold.

- **Class 4 Mechanic's Lien Claims.** Non-duplicative Mechanic's Lien Claims scheduled by the Debtor are estimated to aggregate $449,454.41. These Claims will be treated in one of two alternative ways, depending on whether they are ultimately determined in Mechanic's Lien Litigation to be either senior in priority or, alternatively, not senior to the Bank and thus Unsecured as a practical matter.

The two alternative forms of treatment are:

(i) **Treatment of Senior Mechanic's Lien Claims.** Any Claim determined to be a Senior Mechanic's Lien Claim will be paid in full unless settled for a lesser amount. The Plan also provides that the Bank may elect to establish an escrow fund or Letter of Credit for any Senior Mechanic's Lien Claim to provide replacement collateral for that claimant. If so, that Senior Mechanic's Lien Claim shall be lifted from the real estate against which it is filed and will reattach to the escrow fund.

(ii) **Treatment of Junior Mechanic's Lien Claims**. Any Mechanic's Lien Claim determined to be a Junior Mechanic's Lien Claim, and thus Unsecured, shall be entitled to receive a Cash Distribution equal to their pro rata share of a fund established for the

General Unsecured Claims. The Junior Mechanic's Lien Claims are currently estimated to total $60,985.15.

(iii)  **Class 5 – Other Secured Claims.** Despite representations by the Debtor to the contrary, it is unknown whether there are any Secured Claims other than the Claims of the Bank and the Mechanic's Lien Claims. Any such Claims that exist will be Unimpaired and will remain in effect following the confirmation of the Plan unless otherwise agreed between the Claimant and the Bank.

- **Class 6 – General Unsecured Claims.** The General Unsecured Class 6 Claims are estimated to aggregate approximately $68,656.07. The Bank will contribute $25,000.00 of their Cash Collateral. It is estimated that the liquidation of the unimproved real estate commonly known as Lot 57, 24906 W. Sterling Oaks Court, Shorewood, Illinois will add an additional 25,000 to this fund to create an estimated recovery for Class 6 Creditors of approximately 72.8 percent (72.8%). While the Bank is not seeking a valuation of its Secured Claim as a condition precedent to voting or otherwise, it is not disputed that its Claim is undersecured. The Bank may have Unsecured Deficiency Claims equal to $827,514.53. This unsecured component of the Bank's claim will be included within Class 6 and will share pro rata along with all other allowed unsecured claims. Under the Plan, the Bank's Deficiency Claims will receive the following treatment:

    - The Bank may receive some distribution on their Deficiency Claims after the Plan Transferee sells the Property of the Estate.

    - The Bank retains the right to vote their Deficiency Claims for the Plan.

    - The Bank's Deficiency Claim may not be determined until its collateral has been liquidated and disposed of.

- **Class 7 – [RESERVED].** This Class has been established and reserved for administrative purposes only. There are no members of this class nor claims designated as belonging to this Class.

- **Class 8 – Intercompany Claims.** Intercompany claims will be extinguished under the Plan, and will not receive any Distributions.

- **Class 9 – Interests in Debtor.** All equity interests and ownership interests in the Debtor will be extinguished under the Plan, and those persons and/or entities holding such interests will receive no Distributions.

In short, the basic provisions of the Plan may be summarized as follows:

(i)  The Bank will take the Property of the Estate (other than the portions of the Bank's collateral that is contributed to other Creditors under the Plan and Lot 57, 24906 W. Sterling Oaks Court, Shorewood, Illinois) by having those assets transferred to the designated Plan Transferee in satisfaction of the Bank's Secured Claims;

7

(ii)    The Bank will further facilitate the Plan by contributing funds from its Cash Collateral to Holders of Junior Mechanic's Lien Claims and General Unsecured Claims to assure that they will receive Cash Distributions;

(iii)   The Bank will further facilitate the Plan by allowing the Plan Transferee to pay all Allowed Priority Claims from the Bank's Cash Collateral; and

(iv)    Mechanic's Lien Creditors who are ultimately determined to be Holders of Allowed Senior Mechanic's Lien Claims, either as a result of mechanic's lien litigation or an agreement between such claimant and the Bank, will be paid in full, or will enter into settlements with the Bank.

C.  **Holders of Claims Entitled to Vote.**

Pursuant to §1126 of the Bankruptcy Code, only holders of allowed claims or equity interests in classes of claims or equity interests that are impaired and that are not deemed to have rejected a proposed plan of reorganization or liquidation are entitled to vote to accept or reject such plan. Generally, a claim or interest is impaired under a plan if the holder's legal, equitable or contractual rights are altered under the plan. Classes of claims or equity interests under a Chapter 11 plan in which the holders of claims or equity interests are unimpaired under a Chapter 11 plan are deemed to have accepted a proposed plan and are not entitled to vote to accept or reject such plan. In addition, classes of claims or equity interests in which the holders of claims or equity interests will not receive or retain any property on account of such claims or interests are deemed to have rejected a proposed plan and are not entitled to vote to accept or reject such plan.

**In connection with the Plan:**

- Class 3 is impaired by virtue of, among other things, the mechanics liens upon its collateral and the diminution of the value and quantity of its Cash Collateral. The Holder(s) of claims within Class 3 are entitled to vote, to the extent of such impairment, to accept or reject the Plan.

- Class 6 is Impaired, and to the extent Claims in classes are Allowed Claims, the Holders of such Claims are entitled to vote to accept or reject the Plan.

- Class 1, Class 2, Class 4, and Class 5 are Unimpaired. As a result, Holders of Claims in those Classes are deemed to have accepted the Plan and are not entitled to accept or reject the Plan.

- Holders of Class 8 (Intercompany Claims) and Class 9 (Interests in the Debtor) will not receive or retain any property on account of such Claims or Interests and are Impaired and are deemed to have rejected the Plan. As a result, Holders of Claims and Interests in those Classes are not entitled to vote to accept or reject the Plan.

ACCORDINGLY, A BALLOT TO ACCEPT OR REJECT THE PLAN IS BEING PROVIDED ONLY TO KNOWN HOLDERS OF CLAIMS IN CLASS 3 AND CLASS 5.

The Bankruptcy Code defines "acceptance" of a plan by a class of claims as acceptance by creditors in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims that cast ballots for acceptance or rejection of the plan.

D.     **Voting Procedures.**

If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for the purpose of voting on the Plan. If you hold a Claim in more than one Class and you are entitled to vote Claims in more than one Class, you will receive separate Ballots that must be used for each separate Class of Claims. Please vote and return your Ballot(s).

**All Ballots should be sent to the following addresses:**

>   Clerk of the United States Bankruptcy Court
>   For the Northern District of Illinois
>   Case Number: 10-43501
>   219 South Dearborn Street, 7th Floor
>   Chicago, Illinois 60604

with copies being sent to

>   William J. Connelly, Esq.
>   Hinshaw & Culbertson LLP
>   222 N. LaSalle Street
>   Suite 300
>   Chicago, Illinois 60601.
>   Counsel for the Bank

TO BE COUNTED, YOUR BALLOT(S) INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE ACTUALLY RECEIVED BY THE CLERK OF THE BANKRUPTCY COURT AND COUNSEL FOR THE DEBTOR **NO LATER THAN 4:30 P.M., PREVAILING CENTRAL TIME, ON [DATE] (the "Voting Deadline")**, UNLESS EXTENDED BY THE BANK. YOU MAY RETURN YOUR BALLOT(S) VIA U.S. MAIL, OVERNIGHT MAIL, COURIER OR HAND DELIVERY. ALL SUBMITTED BALLOTS MUST BE SIGNED ORIGINALS.

If you are a Holder of a Claim entitled to vote on the Plan and did not receive a Ballot, received a damaged Ballot or lost your Ballot(s), or if you have any questions concerning the procedures for voting on the Plan, please notify Bank's Counsel, William J. Connelly or Richard B. Polony, at (312) 704-3000 or wconnelly@hinshawlaw.com or rpolony@hinshawlaw.com.

E.     **Confirmation Hearing.**

Pursuant to §1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing on confirmation of the Plan for [DATE], 2011 at [TIME].m., prevailing Central Time, before the Honorable Eugene R. Wedoff, United States Bankruptcy Court for the Northern District of Illinois, Everett McKinley Dirksen Building, Courtroom 744, 219 South Dearborn Street, Chicago, Illinois (the "Confirmation Hearing"). The Bankruptcy Court has directed that objections, if any, to the confirmation of the Plan be served and filed so that they are received on

130056716v4 0917172 36379

or before [DATE] at 4:00 p.m., prevailing Central Time, in the manner described hereinbelow. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

THE LENDER BELIEVES THAT THE PLAN WILL ACCOMPLISH THE OBJECTIVES OF CHAPTER 11 AND THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR'S CREDITORS. THE BANK URGES CREDITORS TO VOTE TO ACCEPT THE PLAN.

F.    **General Structure of the Plan.**

The Bank filed the Plan on February 7, 2011. Except as otherwise provided in the Plan, the Plan provides for the transfer of substantially all of the value of the Debtor's interests in the Property of the Estate to the Plan Transferee on account of the Bank's Claims. Pursuant to the Plan, the Bank is consenting to the use of their Cash Collateral to satisfy Allowed Administrative Expense, Allowed Priority Tax Claims, Allowed Priority Claims, and Other Allowed Secured Claims. The Bank is also contributing a portion of its Cash Collateral to the Liquidating Trust to provide for a distribution to certain Holders of Allowed Junior Mechanic's Lien Claims and holders of other Allowed General Unsecured Claims and to fund the costs incurred in the administration of the Liquidating Trust. The Plan also provides a mechanism for the treatment of Holders of Allowed Mechanic's Lien Claims. To the extent such Claims constitute Senior Mechanic's Lien Claims, Holders of such Claims will either retain their interests in the property subject to their liens and all of their rights under applicable law, receive payment in satisfaction of their allowed claims, or receive replacement collateral as set forth in the Plan. To the extent such Claims constitute Junior Mechanic's Lien Claims, such Holders shall receive a distribution that is approximately equivalent to that received by Holders of Allowed General Unsecured Claims. In addition, such claimants may receive treatment on account of their Claim as agreed between the Bank and the Creditor.

G.    **Summary of Treatment of Claims and Interests Under the Plan.**

As contemplated by the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified under the Plan. Allowed Administrative Claims are intended to be paid in full on or as reasonably practicable after, the Initial Distribution Date of the Plan (or thereafter when they become Allowed), or for ordinary course Administrative Claims, when such Claims become due. Priority Tax Claims are intended to be paid in full in regular installment Cash payments, occurring not less frequently than quarterly over a period not to exceed three (3) years from the Petition Date. At the Liquidating Trustee's option, and with the consent of the Bank, Allowed Priority Tax Claims can be paid in full at any time.

The Plan provides for time periods and procedures with respect to the objections to and allowances of Claims, including Administrative Claims and Fee Claims. The time periods and procedures are necessary to permit the Bank and the Liquidating Trustee an adequate opportunity to review, reconcile and resolve all Claims against the Debtor.

The classification and treatment for all Classes are described in more detail in Article IV.B hereof.

130056716v4 0917172 36379